# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JERRY B. PALMER, #A-87712,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CASE NO. 10-cv-718-MJR |
| | ) |
| **MICHAEL RANDLE, et al.,** | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**REAGAN District Judge:**

Plaintiff is an inmate currently in the Lawrence Correctional Center. At various times during the incidents discussed in this action, Plaintiff was incarcerated at the Big Muddy River Correctional Center, Stateville Correctional Center, Western Illinois Correctional Center, and Hill Correctional Center. Plaintiff brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides, in pertinent part:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

1

28 U.S.C. § 1915A.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Upon careful review of the complaint and supporting exhibits, the Court finds that some of the claims in the complaint may be dismissed at this stage of the litigation. The Court need not address the statute of limitations, as the claims which would be subject to limitations are disposed of in this Order.

**Facts:**

The following version of the facts of the case is gleaned from Plaintiff's amended complaint (Doc. 16). On September 11, 2002, while Plaintiff was incarcerated at Big Muddy River Correctional Center and on work detail assignment, an object slipped from a truck and injured Plaintiff's left shoulder. Plaintiff was seen by Defendant John Doe 1 (a doctor), who examined Plaintiff and informed him that he had a torn rotator cuff. Although at one point surgery was mentioned, John Doe 1 ultimately put Plaintiff on a regimen of frequent hydrocortisone shots. After a while, Plaintiff felt that the shots were not working and informed John Doe 1 that he wanted surgery. This request was denied. Plaintiff then went to John Doe 2 (Big Muddy River warden), John Doe 3 (Big Muddy River assistant warden of programs), and John Doe 4 (Big Muddy River assistant warden of operations) with this request, which was denied by all three.

On October 12, 2004, Plaintiff was transferred to Stateville Correctional Center. Upon arrival, Plaintiff requested medical attention, and was seen by John Doe 5 (a doctor). John Doe 5 denied Plaintiff's request for surgery, and instead prescribed pain medication. Plaintiff complained

to John Doe 6 (Stateville warden), who did nothing to resolve the issue. After multiple requests for further medical attention, Plaintiff was seen by John Doe 7 (a doctor), who continued the prescription and told Plaintiff that he did not have the power to approve the surgery.

On February 1, 2006, Plaintiff was transferred to Western Correctional Center. Once there, Plaintiff was seen by medical staff; and John Doe 8 (a doctor) discontinued all of Plaintiff's previous medications. John Doe 8 prescribed Darvocet for pain relief. Plaintiff had an allergic reaction to Darvocet, causing him pain and what may have been a stroke. On August 22, 2008, Plaintiff was taken to an outside hospital and received treatment there for the allergic reaction, though not for the injury to his arm.

On February 4, 2009, Plaintiff was transferred to Hill Correctional Center. Once there, Plaintiff was seen by a specialist, who has not been named as a defendant in this action. The specialist told Plaintiff that his arm was "no good."

On March 5, 2009, Plaintiff was transferred to Lawrence Correctional Center. Plaintiff was then seen by Defendant Fenoglio, who examined Plaintiff's arm and ordered an MRI. Defendant Fenoglio determined that Plaintiff's arm was beyond repair, because Plaintiff had been denied the surgery for so long. As a result, Defendant Fenoglio declared Plaintiff handicapped, but did not order surgery. Plaintiff complained to Defendants Ryker, Campanella, and Henton that nothing was being done to treat his now chronic pain.

During Plaintiff's incarceration, the Illinois Department of Corrections (IDOC) has undergone a number of personnel changes in the position of director. Defendant Walker was the director when Plaintiff began his incarceration. At some point thereafter, Defendant Randle became the director. And at still some later point, Defendant Godinez became the director of IDOC. Sandra

Funk was and remains the IDOC transfer coordinator who was in charge of overseeing Plaintiff's numerous transfers. And, although the doctors discussed above were treating inmates at IDOC facilities, they were contract employees of Defendant Wexford Health Source, Inc.

**Discussion:**

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of FED. R. CIV. P. 8(e) and 10(b), the Court finds it appropriate to break the claims in Plaintiff's *pro se* complaint into numbered counts as set forth below. The parties and the Court will use these designations in all future pleadings. The designation of these counts does not constitute an opinion as to their merit.

**Count 1:     Deliberate Indifference**

**A. Big Muddy Correctional Center**

Plaintiff claims that he was injured on September 11, 2002, while he was incarcerated at Big Muddy River Correctional Center, located in the Southern District of Illinois. It was at this institution that he was seen by John Doe 1 (doctor), who treated Plaintiff with hydrocortisone shots. After John Doe 1 denied Plaintiff's request for surgery, Plaintiff appealed to John Doe 2 (warden), John Doe 3 (asst. warden), and John Doe 4 (asst. warden), all of whom denied the request.

**B. Stateville Correctional Center**

Plaintiff was transferred to Stateville Correctional Center in October 2004, which is located in the Northern District of Illinois. At this institution Plaintiff was seen by John Doe 5 (doctor) who prescribed Plaintiff pain medication. Plaintiff then complained to John Doe 6 (warden), who did nothing. Plaintiff was later seen by John Doe 7 (doctor), who was not authorized to order surgery.

### C. Western Illinois Correctional Center

Plaintiff was transferred to Western Illinois Correctional Center in the Central District of Illinois on February 1, 2006. Plaintiff was seen by John Doe 8 (doctor), who prescribed Darvocet for pain relief, to which Plaintiff had an allergic reaction, and was taken to the hospital. On February 4, 2009, Plaintiff was transferred to Hill Correctional Center in the Central District of Illinois, where he was seen by a specialist not named in this action.

### D. Lawrence Correctional Center

Plaintiff was transferred to Lawrence Correctional Center on March 5, 2009. Plaintiff was seen by Defendant Fenoglio, who examined Plaintiff's arm, ultimately determining that the arm was beyond repair. From Plaintiff's complaint, it does not seem that Defendant Fenoglio ordered surgery on the arm or attempted to treat Plaintiff for the pain, but instead simply labeled Plaintiff as handicapped. Plaintiff complained about the lack of treatment to Defendants Ryker, Campanella and Henton, the wardens at Lawrence, who apparently did nothing about the issue.

Plaintiff alleges that Defendant John Doe 1 from Big Muddy River, John Doe 5 and John Doe 7 from Stateville, John Doe 8 from Western Illinois, and Defendant Fenoglio from Lawrence, showed deliberate indifference to his medical needs when they denied his requests for surgery on his torn rotator cuff. The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). This encompasses a broader range of conduct than intentional denial of necessary medical treatment, but it stops short of "negligen[ce] in diagnosing or treating a medical condition." *Estelle,* 429 U.S. at 106. *See also Sanville v. McCaughtry,* 266

F.3d 724, 734 (7th Cir. 2001).

> To prevail on an Eighth Amendment claim, a plaintiff must show that the responsible prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Dunigan ex rel. Nyman v. Winnebago County*, 165 F.3d 587, 590 (7th Cir. 1999). Deliberate indifference involves a two-part test. The plaintiff must show that (1) the medical condition was objectively serious, and (2) the state officials acted with deliberate indifference to his medical needs, which is a subjective standard.

*Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000). However, the Supreme Court stressed that this test is not an insurmountable hurdle for inmates raising Eighth Amendment claims:

> [A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm . . . . Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Farmer,* 511 U.S. at 842.

The Seventh Circuit's decisions following this standard for deliberate indifference in the denial or delay of medical care require evidence of a defendant's actual knowledge of, or reckless disregard for, a substantial risk of harm. *See Chavez v. Cady*, 207 F.3d 901, 906 (7th Cir. 2000) (officers were on notice of seriousness of condition of prisoner with ruptured appendix because he "did his part to let the officers know he was suffering"). The Seventh Circuit also recognizes that a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008); *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003) (courts will not take sides in disagreements regarding medical personnel's judgments or techniques). However, a plaintiff inmate need not prove that a defendant intended the harm that ultimately transpired, nor believe the harm

would occur. *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002) (*discussing Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996)).

Plaintiff suffers from a torn rotator cuff which causes him severe pain. A torn rotator cuff may result in atrophy of the shoulder muscles, pain, weakness in the surrounding muscles, and/or a crackling sensation when moving the shoulder.[1] This is the sort of chronic, painful condition that a layperson would find objectively serious. *See Laaman v. Helgemoe*, 437 F.Supp. 269, 311 (D.N.H. 1977) (a "serious" medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention). *See also Mahan v. Plymouth Cnty House of Corr.*, 64 F.3d 14, 18 (1st Cir. 1995); *Monmouth Cnty Corr. Institution Inmates v. Lanzaro,* 834 F.2d 326, 347 (3rd Cir. 1987), *cert. denied*, 486 U.S. 1006; *Sheldon v. Penzley*, 49 F.3d 1312, 1316 (8th Cir. 1995); *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996); *Hill v. DeKalb Regional Youth Detention Ctr.*, 40 F.3d 1176, 1186 (8th Cir. 1994). However, Plaintiff must also show that defendants were aware of the seriousness of his condition, and elected to ignore it. *Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000).

Plaintiff alleges that Defendants John Doe 1, John Doe 5, John Doe 7, and John Doe 8 each showed deliberate indifference to his medical needs when they denied his requests for surgery. John Doe 1 was the first doctor that Plaintiff saw after the accident, and was the first to mention surgery as a possible treatment. However, John Doe 1 ultimately decided that Plaintiff could be treated with hydrocortisone shots. Once transferred to Stateville, Plaintiff was treated by John Does 5 and 7, who

---

[1] American Academy of Orthopaedic Surgeons, <u>Rotator Cuff Tears,</u> Orthopaedic Information (May 20, 2011), http ://orthoinfo.aaos.org/topic.cfm?topic=A00064#Symptoms.

determined that surgery was unnecessary, and prescribed Plaintiff pain medication. Upon transfer to Western, Plaintiff was treated by John Doe 8, who prescribed a different pain medication, which caused Plaintiff to have a reaction requiring treatment at an outside hospital.

Though the shots and various pain medications may not have been Plaintiff's preferred treatment, or even the best treatment for a torn rotator cuff, it shows an effort on these John Doe doctors' part to treat Plaintiff's condition. Plaintiff may have disagreed with the treatment plan, but mere disagreement with a physician's chosen course of an inmate's medical treatment does not amount to deliberate indifference under the Eighth Amendment. *See Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996); *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) (Courts will not takes sides in disagreements about medical personnel's judgments or techniques). Although Plaintiff did have an allergic reaction to the medication prescribed by John Doe 8, he was promptly taken to the hospital for treatment, and there is no indication that John Doe 8 knew Plaintiff was allergic to that particular medication. Even if John Doe 8 should have known of the allergy, that amounts to negligence or malpractice at worst, which is not actionable under § 1983. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). As such, Plaintiff has failed to state a claim for deliberate indifference against Defendants John Doe 1, 5, 7, and 8.

Plaintiff alleges that Defendant Fenoglio showed deliberate indifference to his medical needs when, after arriving at Lawrence, Fenoglio examined Plaintiff's arm and determined that it was beyond repair. Instead of ordering surgery or providing treatment for the pain, Defendant Fenoglio declared Plaintiff handicapped. It is not entirely clear, based on Plaintiff's complaint, why Defendant Fenoglio did not treat the pain, or why he made no attempt to treat the condition. As a

result, this claim for deliberate indifference against Fenoglio cannot be dismissed at this time.

**Count 2: Failure to Act**

Plaintiff next claims that Defendants John Doe 2 (warden), John Doe 3 (asst. warden), and John Doe 4 (asst. warden) of Big Muddy River, Defendants Ryker, Campanella and Henton of Lawrence, and John Doe 6 of Stateville failed in their supervisory duties when, after Plaintiff complained to them about his inadequate treatment, they did nothing to resolve the issue. Plaintiff alleges that because all of these individuals are either wardens or assistant wardens at their institutions, they had the power to order Plaintiff's surgery, but did not do so.

The doctrine of respondeat superior does not apply to § 1983 actions; therefore, in order to be liable, there must be a constitutional violation, and the relevant defendant must allegedly be personally responsible for that constitutional violation. *See Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001) (citing *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). Where a defendant is alleged to have directed the conduct or to have had knowledge of, or given consent to, the conduct that caused the constitutional violation, that defendant has sufficient personal involvement to be responsible for the violation, even though that defendant has not participated directly in the action. *Chavez*, 251 F.3d at 652; *McPhaul v. Bd. of Comm'rs of Madison Cnty.*, 226 F.3d 558, 566 (7th Cir. 2000). A defendant in a supervisory capacity may then be liable for "deliberate, reckless indifference" where he or she has purposefully ignored the misconduct of his or her subordinates. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (discussing *Chavez*, 251 F.3d at 651 ("The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.")).

As to Defendants John Doe 2 (warden), John Doe 3 (asst. warden), and John Doe 4 (asst.

9

warden) of Big Muddy River, Plaintiff alleges that these Defendants are responsible for the actions of John Doe 1 (doctor) mentioned above in Count 1. However, for the reasons stated in that section, the Court determined that Defendant John Doe 1 had committed no constitutional violation. Because John Doe 1 committed no constitutional violation, it follows that Defendants John Doe 2, John Doe 3, and John Doe 4 of Big Muddy River cannot be held to have directed any action that resulted in a constitutional violation. For this reason, the claims against Defendants John Doe 2, John Doe 3, and John Doe 4 of Big Muddy River are dismissed with prejudice.

For the same reasons, Plaintiff has not stated a claim against John Doe 6, the warden of Stateville. Plaintiff claims that John Doe 6 is responsible for the actions of doctors John Doe 5 and John Doe 7, mentioned in Count 1, who also denied Plaintiff surgery. The Court found that John Doe 5 and John Doe 7 had committed no constitutional violation, and for the reasons discussed above, this means that John Doe 6 has also committed no constitutional violations. Accordingly, the claims against John Doe 6 of Stateville are dismissed with prejudice.

As to Defendants Ryker, Campanella and Henton, Plaintiff alleges that they are responsible for the actions (or inactions) of Defendant Fenoglio, as detailed above in Count 1. Plaintiff alleges in his complaint that he informed Defendants Ryker, Campanella and Henton that he was not being treated for pain. However, Plaintiff does not allege that these Defendants directed Defendant Fenoglio's conduct, or even that they knew about it until Plaintiff informed them. There is no indication in Plaintiff's complaint that these individuals purposefully turned a blind eye to Defendant Fenoglio's allegedly inadequate treatment. Plaintiff alleges only that he "unsuccessfully brought his complaint to the Wardens of Lawrence. . . ," without explaining why he was unsuccessful (Doc. 16 p. 4). Plaintiff at no point accuses these Defendants of condoning the actions of Defendant Fenoglio,

or consenting to it. As it is, Plaintiff has failed to sufficiently allege that Defendants Ryker, Campanella and Henton were responsible for Defendant Fanoglio's actions, and for this reason this count against Defendants Ryker, Campanella and Henton must be dismissed without prejudice.

**Count 3:       Supervisory Liability**

Plaintiff alleges that Defendants Walker, Randle and Godinez, the former and current directors of IDOC, respectively, are liable for the inaction of prison staff because the director is in charge of making policy, customs and practices that govern all IDOC facilities. Plaintiff further alleges that the Defendant IDOC directors are liable for the doctors who work in IDOC facilities, even though the doctors are employees of Defendant Wexford. Plaintiff also seeks to hold Defendant Wexford liable for the actions of its employee doctors.

As stated above, there is no respondeat superior in § 1983 actions. The Seventh Circuit has held that "public employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). *See also Monell v. Dept. of Social Services*, 436 U.S. 658 (1978); *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (doctrine of respondeat superior does not apply to § 1983 actions). However, a defendant may be sufficiently involved in a constitutional violation where he has acted in a supervisory capacity and has directed or consented to the conduct, even though he was not directly a part of the action. *Chavez v. Illinois State Police*, 251 F.3d 612, 652 (7th Cir. 2001).

Plaintiff has not alleged that Defendants Walker, Randle or Godinez directed or consented to any constitutional violations. Instead, Plaintiff claims that these Defendants are liable simply because they were, or are currently, the director of the IDOC. There is no indication that these individuals themselves committed any constitutional violations. Nor does Plaintiff point to any

policy that these Defendants allegedly crafted to ensure that Plaintiff did not receive medical treatment. The same holds true for Defendant Wexford; Plaintiff makes no allegation that any individual Defendant doctor acted or failed to act as a result of an official policy espoused by Wexford. *See Woodward v. Corr. Medical Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the violation). Plaintiff has failed to sufficiently allege that these Defendants themselves committed constitutional violations, or were in any way involved in any violations committed by others. As a result, the claims against Defendants Walker, Randle, Godinez and Wexford are dismissed without prejudice.

**Count 4:     Transfers**

Plaintiff alleges that Defendant Funk, the transfer coordinator, violated his constitutional rights when Funk authorized his multiple transfers over a period of nine years, because the transfers interfered with his medical treatment.

However, both the United States Supreme Court and the Court of Appeals for the Seventh Circuit have stated that prisoners do not have a constitutional right to remain in one institution over another, as "prisoners possess neither liberty nor property [interests] in their classifications and prison assignments. States may move their charges to any prison in the system." *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) (*citing Montanye v. Haymes*, 427 U.S. 236 (1976)). *See also Meachum v. Fano*, 427 U.S. 215, 224 (1976) (the Constitution does not guarantee placement in a particular prison).[2] Because Plaintiff does not have a constitutional right to remain in one

---

[2]The caveat to this rule – involving transfer or assignment to a prison where the conditions impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" – does not apply here, where the transfer decision does not involve Tamms Correctional Center, the closed maximum security prison (i.e.,

12

institution, his rights were not violated when Defendant Funk authorized his transfers to Stateville, Western Illinois, Hill and Lawrence Correctional Centers. Consequently, this claim against Defendant Funk is dismissed with prejudice.

**Disposition:**

Only Count 1 against Defendant Fenoglio has survived the Court's threshold review.

**IT IS THEREFORE ORDERED** that Defendants **JOHN DOE 1, JOHN DOE 2, JOHN DOE 3, JOHN DOE 4, JOHN DOE 5, JOHN DOE 6, JOHN DOE 7, JOHN DOE 8,** and **FUNK** are **DISMISSED** from this action **with prejudice**. Defendants **RYKER, CAMPANELLA, HENTON, WALKER, RANDLE, GODINEZ**, and **WEXFORD HEALTH SOURCE, INC.**, are **DISMISSED** from this action **without prejudice**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for Defendant **FENOGLIO**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, if the Defendant cannot be found at the address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work

---

supermax prison) in Illinois. *See Westefer v. Snyder*, Civil No. 00-162-GPM (S.D. Ill. decided July 20, 2010), *citing Sandin v. Conner*, 515 U.S. 472 (1995).

address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file, nor disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendant (or upon defense counsel once an appearance is entered), a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of any document was served on Defendant or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Williams** for further pre-trial proceedings.

Further, this entire matter is hereby **REFERRED** to **United States Magistrate Judge Williams** for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.

*See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED: June 20, 2011**

          **/s/ MICHAEL J. REAGAN**
          **DISTRICT JUDGE**