IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JERRY B. PALMER, #A-87712,          )
                                     )
            Plaintiff,               )
                                     )
vs.                                  )   Case No.  10–cv–718–MJR–SCW
                                     )
DR. JAMES FENOGLIO,                  )
                                     )
            Defendant.               )


REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

### I.  Introduction

This matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on the issue of whether Plaintiff has exhausted his administrative remedies as to the claims against Dr. James Fenoglio. It is **RECOMMENDED** that the Court **FIND** that Plaintiff failed to exhaust his administrative remedies, that the Court **GRANTS** Defendant Fenoglio's Motion for Summary Judgment (Doc. 26), and that the Court **ADOPT** the following findings of fact and conclusions of law.

### II.  Factual Findings

**A.    Procedural Background**

On September 10, 2010, Plaintiff Jerry B. Palmer ("Plaintiff") filed his Complaint alleging deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Pursuant to 28 U.S.C. § 1915A, District Judge Reagan conducted a preliminary review of Plaintiff's Complaint on June 20,

2011. Judge Reagan dismissed all claims except Plaintiff's deliberate indifference claim against Defendant Dr. Fenoglio (Doc. 17, Count 1). As to Plaintiff's deliberate indifference claim, he alleges that Dr. Fenoglio failed to properly treat his injured arm (Doc 17 at p. 5). Plaintiff alleges that rather than attempting to treat his arm, Dr. Fenoglio simply determined it was beyond repair and labeled him handicapped (*Id.*).

Now before the Court for a Report and Recommendation is Defendant's Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Doc. 26) and Plaintiff's Motion in Response to the Defendant's Motion for Summary Judgment (Doc. 31). The Defendant's motion alleges Plaintiff failed to exhaust his administrative remedies as required by the Prisoner Litigation Reform Act pursuant to 42 U.S.C. §1997e(a). Specifically, Defendant alleges that while Plaintiff filed a grievance on May 17, 2009[1] regarding shoulder pain, Plaintiff's grievance never mentions Dr. Fenoglio nor does it indicate that Dr. Fenoglio ever saw Plaintiff for treatment (See Doc. 26 at p.3; Ex. A at pp. 27-32). As it relates to the treatment at Lawrence Correctional Center, Plaintiff's grievance only refers to a nurse practitioner specifically.

**B.** *Pavey* **Hearing**

Plaintiff's Complaint indicates that he met with Defendant Dr. Fenoglio regarding his shoulder in March, which was shortly after he was transferred from Hill Correctional Center ("Hill") to Lawrence Correctional Center ("Lawrence"). On May 17, 2009 Plaintiff filed a grievance alleging inadequate treatment of Plaintiff's injury. In accordance with *Pavey v. Conley*, the Court conducted an evidentiary hearing on February 27, 2012. *Pavey*, **544 F.3d 739 (7th Cir. 2008).** The

---

[1] Plaintiff also filed a May 11, 2009 grievance requesting to be transferred to a facility where he could obtain physical therapy and a cell reassignment. Although the grievance officer noted that Plaintiff claimed he was not getting adequate medical care, the ARB ultimately construed his grievance as one involving cell assignment and transfer, and not medical care. In any event, it is clear from the record that Plaintiff had not seen Dr. Fenoglio at this time and the May 11 grievance does not mention Dr. Fenoglio nor does it allege inadequate treatment on the part of anyone at Lawrence.

crux of the issue was whether Plaintiff saw Defendant Dr. Fenoglio before or after his May 17, 2009 grievance. Plaintiff alleges he saw Defendant Dr. Fenoglio in March 2009, while Defendant Dr. Fenoglio alleges he saw Plaintiff sometime after May 2009.

At the *Pavey* hearing, Plaintiff testified that he was unsure of the exact dates that he saw Defendant Dr. Fenoglio regarding his shoulder. Plaintiff acknowledged that the first person he saw after being transferred to Lawrence in March 2009 was a nurse practitioner. At that time, Plaintiff asked the nurse if she received paperwork regarding his shoulder injury to which she responded that she was not seeing him about his arm, but rather about his medications. In hopes of acquiring a second opinion, Plaintiff testified that he informed the nurse that the doctor at Hill informed him that he would not perform surgery on Plaintiff's shoulder because his arm was "dead." The nurse told Plaintiff that they did not provide second opinions for inmates, which led to the Plaintiff requesting to see a doctor. In addition to allegedly requesting to see a doctor, the Plaintiff testified that he also wrote two grievances with the help of other inmates. Plaintiff testified that he next met with Warden Ryker, who asked the Plaintiff if his shoulder was hurting. Plaintiff informed the Warden of his shoulder injury and Warden Ryker allegedly responded that he would schedule him an appointment with Defendant Dr. Fenoglio. While Plaintiff stated that he did eventually see Dr. Fenoglio, he acknowledged that he was unable to recall the exact dates. Plaintiff could not remember if he saw Dr. Fenoglio prior to filing his May 17, 2009 grievance, however, he testified that he saw Dr. Fenoglio regarding his arm on at least two occasions. According to the Plaintiff, Dr. Fenoglio told him nothing could be done for his arm, and proscribed him pain medication.

With respect to the exact dates which Plaintiff saw Dr. Fenoglio, Plaintiff testified that the medical records would indicate such dates but Plaintiff was unable to obtain the records

from the prison. Counsel for the Defendant indicated that he had all of the Plaintiff's medical records in his possession. Accordingly, the Court ordered Defendant to provide Plaintiff's medical records dating from February 2009 through October 2009 to both the Court and Plaintiff.

Upon receipt and review of the medical records, it appears the first person Plaintiff saw regarding his shoulder at Lawrence was a registered nurse on March 2, 2009 during his intake review. Between March 4, 2009 and June 3, 2009, Plaintiff saw nurses on several different occasions for shoulder pain. The medical records indicate Plaintiff first saw Defendant Dr. Fenoglio on June 23, 2009, for what appears to be bronchitis and diabetes issues. The records do not indicate any discussion of a left shoulder injury at that time. Plaintiff did not see Defendant Dr. Fenoglio regarding his shoulder pain, however, until September 03, 2009.

### III. Conclusions of Law

Summary Judgment is proper "if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, **604 F.3d 464, 467 (7th Cir. 2010).** The Court must construe all facts in the light most favorable to Plaintiff, as the non-moving party, and draw all reasonable inferences in his favor. *Ogden v. Atterholt*, **606 F.3d 355, 358 (7th Cir. 2010)**.

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). **42 U.S.C. § 1997e(a)**. That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such *administrative remedies as are available are exhausted*." *Id.* **(emphasis added).** The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, **438**

**F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion")**. Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, **544 F.3d 739, 740-41(7th Cir. 2008).** Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* **at 742.** Although the court in *Pavey* included a hearing as one of the steps in determining

whether the plaintiff had satisfied the exhaustion requirement, "there is no reason to conduct an evidentiary hearing" in a "situation [where] there are no disputed facts regarding exhaustion, only a legal question." *Doss v. Gilkey*, 649 F.Supp.2d 905, 912 (S.D.Ill. 2009) (Gilbert, Phil J.).

A.   **Exhaustion Requirements Under Illinois Law**

As an inmate confined within the Illinois Department of Corrections, Hall was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. **20 Ill. Administrative Code § 504.800 *et seq*.** The grievance procedures first require inmates to speak with the counselor about their complaint. **20 Ill. Admin. Code § 504.810(a)**. Then, if the counselor does not resolve the issue, the inmate must file a grievance form directed to the Grievance Officer within 60 days of the incident. *Id.* The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code §504.810(a)(b).** "The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer...[who] shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code §504.830(d).** If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board ("ARB"). The grievance procedures specifically state, "[i]f after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of

the decision. Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached." **20 Ill. Admin. Code §504.850(a)**. "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." **20 Ill. Admin. Code §504.850(e).** "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." **20 Ill. Admin. Code §504.850(f)**.

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer ("CAO") who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. **20 Ill. Admin. Code §504.840(a**). If an inmate forwards the grievance to the CAO as an emergency grievance, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him which course he has decided is necessary after reading the grievance. **20 Ill. Admin. Code §504.840(b)**. Once the CAO has informed the inmate of his decision, the inmate may then appeal that decision to the ARB on an expedited basis. **20 Ill. Admin. Code §504.850(g)**.

B.     Analysis

Defendant Fenoglio argues that he is entitled to summary judgment on Plaintiff's deliberate indifference claim because Plaintiff has failed to exhaust his administrative remedies against him. Defendant argues that although Plaintiff's May 17, 2009 grievance deals with his shoulder injury, the grievance does not mention Defendant. After reviewing the medical records requested at the *Pavey* hearing, it is clear from the record that Plaintiff did not see Dr. Fenoglio until

*after* his May 17, 2009 grievance alleging lack of care. Therefore, because Plaintiff's grievance does not mention Dr. Fenoglio and he did not see him until after he filed his grievance, Plaintiff has not exhausted all of his available administrative remedies.

Plaintiff filed a grievance on May 17, 2009 for lack of care regarding his shoulder. At the *Pavey* hearing, Plaintiff testified that he saw Dr. Fenoglio on at least two occasions regarding his shoulder, but was unsure of the exact dates. Plaintiff could not recall if he saw Defendant before or after the May 17, 2009 grievance and noted that he did not write the grievance himself but had another inmate do so. Plaintiff also indicated he saw several nurses and the Warden regarding his shoulder before seeing Dr. Fenoglio. The medical records indicate that while Plaintiff complained of his shoulder to a nurse practitioner upon his intake review, and several other nurses, Plaintiff did not see Defendant Fenoglio until June 23, 2009. However, the medical records do not indicate that Plaintiff complained of his shoulder at this meeting, and instead the focus of the meeting was Plaintiff's bronchitis and possible diabetes. The records indicate that Plaintiff did not see Defendant Fenoglio for his *shoulder* until September 3, 2009. There is nothing in the medical records, testimony, or briefs filed with the Court that suggests Plaintiff saw Dr. Fenoglio regarding his shoulder before the May 17, 2009 grievance was filed.

As it is clear from the evidence in the record that Plaintiff had not seen Dr. Fenoglio prior to filing his May 17, 2009 grievance alleging lack of care, Plaintiff has not exhausted his remedies against Defendant Fenoglio. First, the Court notes that Plaintiff neither names nor describes Defendant Fenoglio in his grievances. The Illinois Department of Correction's Grievance Procedures specifically states that an inmate must name, or at the very least, describe the person who is the subject of the grievance. **20 Ill. Admin. Code § 504.810(a).** This requirement meets with the purpose of the grievance procedure which is to "alert prison officials to perceived problems

and to enable them to take corrective action without first incurring the hassle and expense of litigation." *Cannon v. Washington*, **418 F.3d 714, 719 (7th Cir. 2005).** Here, however, Plaintiff does not mention Dr. Fenoglio. Instead, the grievance states that Plaintiff has met with five nurses, two correctional officers, and the crisis team, but does not indicate that he was examined by Fenoglio. Plaintiff also does not try to describe Dr. Fenoglio, nor does he even allege that he has seen a doctor at Lawrence. In fact, Plaintiff's grievance only mentions a doctor in the first sentence of his grievance as a general allegation that the prison has failed to allow him to see a doctor. By failing to grieve against Dr. Fenoglio, Lawrence Correctional Center could not be aware that Plaintiff had a problem or provided a chance to rectify any potential issues that may have existed. Thus, Plaintiff failed to exhaust all available administrative remedies against Dr. Fenoglio.

Further, the Court notes that Plaintiff could not have properly named Defendant Fenoglio in his May 17, 2009 grievance, because he had not yet seen him. Plaintiff testified that he was unsure when he saw Defendant Fenoglio, but he did recall that he saw him after seeing several nurses and the warden, which is consistent with the medical records. After reviewing the records, it is clear that Plaintiff first saw Defendant Fenoglio for his *shoulder* on September 3, 2009. Also, in response to Plaintiff's May 11, 2009 and May 17, 2009 grievances, Plaintiff's counselor noted that Dr. Fenoglio was made aware of the grievance and would bring Plaintiff in for an exam, further evidence that Plaintiff had not yet been seen by Dr. Fenoglio at the time he wrote his grievances. Thus, as Plaintiff had not yet seen Defendant Fenoglio on May 17, 2009, there was nothing for the Plaintiff to grieve against Dr. Fenoglio on that day as Dr. Fenoglio never had a chance to treat Plaintiff for his shoulder. The grievance procedures require inmates to file a grievance within 60 days of the incident. **20 Ill. Admin. Code § 504.810(a)**. Plaintiff, therefore, should have filed his grievance *after* seeing Defendant Fenoglio regarding his shoulder. Therefore, as Plaintiff did not

name Dr. Fenoglio in his May grievance, nor did he file another grievance regarding Dr. Fenoglio's care after he finally was seen by Dr. Fenoglio in September of 2009, the undersigned **RECOMMENDS** that the Court **FIND** that Plaintiff has failed to exhaust his administrative remedies.

## IV.   Conclusion

Accordingly, the undersigned **RECOMMENDS** that the Court **FIND** that Plaintiff has failed to exhaust his administrative remedies against Dr. Fenoglio**, GRANT** the Motion for Summary Judgment (Doc. 26) filed by Dr. Fenoglio, and **DISMISS** the remainder of Plaintiff's claims.  Further, the undersigned **RECOMMENDS** that the dismissal be with prejudice.  Plaintiff's failure to exhaust was the sole fault of Plaintiff.[2]  *Pavey*, **544 F.3d at. 742.**   Plaintiff failed to mention Dr. Fenoglio in any grievance and failed to further grieve any aspect of his treatment after seeing Dr. Fenoglio.

   **IT IS SO ORDERED**.

   DATED: April 2, 2012

                                                                     */s/ Stephen C. Williams*
                                                                      STEPHEN C. WILLIAMS
                                                                      United States Magistrate Judge

---

[2] The Court also notes that the events in Plaintiff's Complaint occurred in 2009 and thus the time for filing a grievance has long since passed.