IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JERRY B. PALMER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 10-CV-0718-MJR |
| | ) |
| DOCTOR FENOGLIO, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

**REAGAN, District Judge:**

Before the Court is Defendant Doctor Fenoglio's motion for summary judgment (Doc. 26), the Report of United States Magistrate Judge Stephen C. Williams recommending that summary judgment be granted (Doc. 37), as well as Plaintiff Jerry B. Palmer's initial response to the motion for summary judgment (Doc. 31) and his objection to the Report and Recommendation (Doc. 38).

### I.  Introduction and Factual/Procedural Background

On September 11, 2002, while Plaintiff Jerry B. Palmer was incarcerated at Big Muddy River Correctional Center and on a work detail assignment, an object slipped from a truck and injured the rotator cuff of Plaintiff's left shoulder.  Palmer was subsequently transferred to Stateville Correctional Center in October 2004, then to Western Correctional Center in February 2006, then to Hill Correctional Center in February 2009 and, finally, in March 2009 he was transferred to Lawrence Correctional Center.  While at each institution, Plaintiff sought treatment (preferably surgery) for his injury and lasting pain; dissatisfied, he filed this action on September 17, 2010.  At the Court's direction, Palmer filed an amended complaint on May 16, 2011, which

remains the controlling pleading (Doc. 16).  On preliminary review, the undersigned Judge found that Palmer had stated a claim against Defendant Dr. James Fenoglio for deliberate indifference to a serious medical need, a violation of Palmer's rights under the Eighth Amendment.  All other claims and all other Defendants were dismissed.

On October 6, 2011, Dr. Fenoglio filed a motion for summary judgment (Doc. 26), arguing that Palmer had failed to exhaust administrative remedies before filing suit, as is required by 42 U.S.C. § 1997e(a).  Plaintiff Palmer filed a response (Doc. 31).  On February 27, 2012, Magistrate Judge Williams held an evidentiary hearing in accordance with *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). On April 2, 2012, Judge Williams submitted a detailed Report (Doc. 37) recommending that Defendant's motion be granted, which would result in the dismissal of the case.  More specifically, Judge Williams concludes that Palmer did not exhaust administrative remedies relative to Count 1, the Eighth Amendment deliberate indifference claim against Defendant Dr. Fenoglio.

A notice attached to the Report and Recommendation advised the parties of their right to challenge Judge Williams' findings and conclusions by filing "objections" within fourteen days (Doc. 37-1).  On April 17, 2012, Palmer filed a timely objection (Doc. 38).  Accordingly, the Court will undertake *de novo* review of the portions of the Report to which specific objection was made.   28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b); Southern District of Illinois Local Rule 73.1(b); *Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992).  The Court may accept, reject or modify the recommended decision, or recommit the matter to the Magistrate Judge with instructions.  Fed.R.Civ.P. 72(b); Local Rule 73.1(b); *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir. 1999).

## II. The Exhaustion Requirement and the Standard for Summary Judgment

The Prison Litigation Reform Act of 1995 (PLRA) requires prisoners to exhaust administrative remedies before filing suit in federal court. That requirement applies to all suits challenging prison conditions under 42 U.S.C. § 1983, as well as actions under "any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility." 42 U.S.C. § 1997e(a).

Exhaustion of administrative remedies under the PLRA is a condition precedent to suit in federal court. *Dixon v. Page*, 291 F.3d 485, 490 (7th Cir. 2002). The law of this Circuit establishes that the inmate must comply with the rules and procedures governing grievances in the particular institution of incarceration, including any time limitations and *all steps* in a multi-step grievance process.

To properly exhaust remedies within the meaning of the PLRA, the inmate "must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). *See also Burrell v. Powers*, 431 F.3d 282, 284 (7th Cir. 2005). If administrative remedies are *not* properly exhausted prior to commencement of the federal lawsuit, the district court must dismiss the suit (or any claims not fully exhausted). *Burrell*, 431 F.3d at 285; *Jones v. Bock*, 549 U.S. 199, 201 (2007).[4] The IDOC's three-step administrative process for resolving inmate grievances is delineated in 20 Ill. Admin. Code Section 504.810 (West 2008). The inmate is required to follow the sequential process, concluding with an appeal in writing to the Director of the IDOC, by way of the

---

[4] Dismissal is without prejudice to initiating another action, if appropriate, after all remedies have been exhausted. *Burrell*, 431 F.3d at 285, *citing Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002) ("Dismissal for failure to exhaust is without prejudice ...."), and *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) ("all dismissals under § 1997e(a) should be without prejudice"). *Accord Barnes v. Briley*, 420 F.3d 673, 676 (7th Cir. 2005).

Administrative Review Board (ARB).

Failure to exhaust administrative remedies is an affirmative defense; the defendants have the burden of proving that the inmate had available remedies that he did not utilize. *See, e.g., Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006); *Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004). A remedy is "available" if the administrative procedure can lead to some relief, even if it is not the precise relief the inmate wants. *See Booth v. Churner,* 532 U.S. 731, 741 and fn. 6 (2001); *Larkin v. Galloway,* 266 F.3d 718, 723 (7th Cir. 2001). "Prison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use *affirmative misconduct* to prevent a prisoner from exhausting." *Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006) (emphasis added) (citing *Lewis v. Washington,* 300 F.3d 829, 833 (7th Cir. 2002); and *Dale v. Lappin,* 376 F.3d 652, 656 (7th Cir. 2004).

In *Pavey v. Conley,* 544 F.3d 739 (7th Cir. 2008), the Seventh Circuit delineated a three-step process for cases in which exhaustion is contested.

> (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in

determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742. In accordance with *Pavey*, Judge Williams conducted an evidentiary hearing on Defendant's motions for summary judgment.

Summary judgment is appropriate where the pleadings, discovery materials, and any affidavits show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Turner v. The Saloon, Ltd.,* 595 F.3d 679, 683 (7th Cir. 2010); *Durable Mfg. Co. v. U.S. Department of Labor*, 578 F.3d 497, 501 (7th Cir. 2009)(citing Fed.R.Civ.P. 56(c)). *Accord Breneisen v. Motorola, Inc.*, 512 F.3d 972 (7th Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).

In ruling on a summary judgment motion, the district court must construe all facts in the light most favorable to, draw all legitimate inferences in favor of, and resolve all doubts in favor of the non-moving party. *National Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). *Accord Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010); *TAS Distributing Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 630 (7th Cir. 2007). When the non-moving party bears the burden of proof, he must demonstrate the existence of a genuine fact issue to defeat summary judgment. *Reget*, 595 F.3d at 695. Stated another way, to survive summary judgment, the non-movant must provide evidence on which the jury or court could find in his favor. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008).

### III. <u>Analysis</u>

Judge Williams found that there was no evidentiary support for Palmer's contention that he had seen Dr. Fenoglio prior to filing a grievance, making it impossible for Palmer to have grieved the treatment offered by Dr. Fenoglio. Palmer objects to this

conclusion.

It is undisputed that Palmer filed two relevant grievances: the first on May 11, 2009; the second on May 17, 2009.  The grievance dated May 11, 2009, did not name or otherwise reference Dr. Fenoglio (Doc. 26-1, pp. 10-11).   According to the grievance, Plaintiff sought transfer to a facility for physical therapy on his left arm and shoulder.  Plaintiff also opined that without medical treatment, he could incur further injury and pain. The response indicates that the prison counselor was going to take Palmer to see Dr. Fenoglio (Doc. 26-1, p. 10). The grievance does not suggest that Dr. Fenoglio had been asked to see Palmer and had refused to do so.

In the May 17, 2009, grievance, Palmer contends that he had not been allowed to see a physician regarding his left arm and shoulder (Doc. 26-1, pp. 27-32).   According to the grievance, Palmer had been seen by a nurse practitioner on March 5, 2009, and "five nurses, two correctional counselors and the crisis team" (Doc. 26-1, p. 28).   The July 23, 2009, counselor's response indicates that Dr. Fenoglio would examine Palmer and then make recommendations (Doc. 26-1, p. 1).

Key to the exhaustion issue is *when* Palmer saw Dr. Fenoglio.   Palmer does not recall precisely when he first saw Dr. Fenoglio; he initially thought it was in March 2009, but at least before the May 17, 2009, grievance was drafted. Medical records reflect that Palmer first saw Dr. Fenoglio on June 23, 2009, well after the May 17, 2009, grievance had been filed—but the visit pertained to Palmer's bronchitis and diabetes, not his shoulder.   There is documentation clearly establishing that Dr. Fenoglio saw Palmer on September 3, 2009, regarding Palmer's shoulder (Doc. 16-1, p. 7).   Of course, that is of no help to Palmer relative to the exhaustion requirement.

Palmer now asserts that it appears that Dr. Fenoglio "is either attempting to sabotage Plaintiff's proof of being evaluated by Dr. Fenoglio or has provided an altered document." (Doc. 38, p. 1).  Palmer is certain that there must be some record which should show he visited Dr. Fenoglio between March 5 and May 11, 2009.  He offers his own affidavit stating that he saw Dr. Fenoglio before May 11, 2009 (Doc. 38, p. 5). In any event, Palmer contends that it can be reasonably inferred from the May 11, 2009, grievance that his rotator cuff injury was not being properly treated.

Although the exhaustion requirement and the pleading standard for the complaint filed in this Court are separate and distinct, it is helpful to keep in mind that Palmer's Section 1983 claim is against Dr. Fenoglio in his individual capacity for deliberate indifference.  The purpose of the exhaustion requirement is to allow prison officials an opportunity to respond to complaints internally before an inmate initiates suit, thereby reducing the quantity and improving the quality of prisoner litigation.  *Porter v. Nussle,* 534 U.S. 516, 524-525 (2002); *see also Smith v. Zachary,* 255 F.3d 446, 450-451 (7th Cir. 2001).  In order to satisfy the exhaustion requirement, a prisoner must comply with the administrative rules for filing a grievance.  *Jones v. Bock,* 549 U.S. 199, 218 (2007); *Maddox v. Love,* 655 F.3d 709, 720–721 (7th Cir. 2011).  In accordance with 20 Ill.Admin.Code § 504.810, grievances must "contain factual details . . . including what happened, when, where, and the name of each person who is the subject of or otherwise involved in the complaint." *See Maddox,* 655 F.3d at 721.  However, Section 504.810 also states: "This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible." 20 Ill.Admin.Code § 504.810(b).

The May 11, 2009, grievance does alert the prison that Palmer wanted medical treatment and/or physical therapy. However, there is no indication that Dr. Fenoglio had been asked to see or treat Palmer and had declined. There is also no indication Dr. Fenoglio had seen Palmer and mistreated him. Similarly, the May 17, 2009, grievance does not suggest any involvement on the part of Dr. Fenoglio in either declining to treat Palmer or in mistreating him. Neither grievance describes the sort of claim that is asserted against Dr. Fenoglio in this case.

In his affidavit, Palmer swears that he saw Dr. Fenoglio prior to May 11, 2009. However, his own May 17, 2009, grievance contradicts that assertion, in that Palmer specifies the multiple individuals he had seen: a nurse practitioner, five nurses, two correctional counselors and the crisis team (Doc. 26-1, p. 28). Palmer made no mention of Dr. Fenoglio. Palmer's bald, tentative assertion that it "appears" that Dr. Fenoglio is either attempting to sabotage Palmer's proof, or has provided altered documents, is unpersuasive in light of the documentation in the record and Palmer's own grievance.

### IV.    Conclusion

For the foregoing reasons, the Court **ADOPTS** those portions of Magistrate Judge Williams's Report and Recommendation (Doc. 37) to which there was no specific objection; and after a *de novo* review of the portions of the Report to which specific objection was made, including consideration of Palmer's affidavit, the Court **GRANTS** Dr. Fenoglio's motion for summary judgment (Doc. 26), finding that Plaintiff Palmer failed to exhaust administrative remedies prior to initiating this action, as is required by 42 U.S.C. § 1997e(a). Accordingly, Plaintiff Palmer's Eighth Amendment claim against Dr. Fenoglio is **DISMISSED**, without prejudice. All claims against all Defendants have been ruled upon; therefore, this case is closed. The Clerk of Court shall enter final judgment; Plaintiff Palmer shall take nothing from

this action.

       **IT IS SO ORDERED.**

       **DATED: April 27, 2012**

                                          **s/ *Michael J. Reagan***
                                          **MICHAEL J. REAGAN**
                                          **UNITED STATES DISTRICT JUDGE**